Filed 6/23/14  P. v. Cruz CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048101 |
| v. | (Super. Ct. No. 10HF0122) |
| FREDY ZUNIGA CRUZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Carla Singer, Judge.  Affirmed.

David M. McKinney, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Fredy Zuniga Cruz was convicted of committing multiple sex crimes against a child. He contends his trial was unfair because the victim was allowed to testify with the assistance of a support person, and the jury was allowed to consider his failure to deny certain pretrial allegations as adoptive admissions. We do not believe these alleged errors rendered appellant's trial unfair or warrant a reversal. Therefore, we affirm the judgment.

FACTS

In January 2010, seven-year-old R.J. and her family were living in an apartment with several other relatives, including her aunt T.M. and appellant. (Although appellant was R.J.'s second cousin, she referred to him as her uncle.) One day, T.M. arrived home and found appellant and R.J. alone on the living room sofa. Appellant's pants were completely down, and when R.J. stood up, she began adjusting her sweatpants. Appellant claimed nothing was going on, but when T.M. took R.J. aside, she indicated appellant molested her whenever her mother wasn't around.

T.M. relayed this information to R.J.'s parents, and the next day they took R.J. to the hospital. However, they left before she was examined because they feared that, as undocumented immigrants, they would have R.J. taken away from them if the authorities found out she had been molested by a relative. Later that day, the police came to their house to investigate. Based on the same fear, her parents instructed R.J. not to reveal the molestation, so she kept quiet about it.

The following day, though, they brought R.J. in to be interviewed by a social worker. Concerned her mother would go to jail, R.J. initially denied she had ever been molested. But as the interview wore on, she indicated appellant had molested her on multiple occasions. She said appellant had touched her vagina with his penis eight times, and when he put it inside her, it hurt. During a follow-up interview, she alleged appellant had also sodomized and digitally penetrated her. Although a forensic exam of

2

R.J. revealed no significant findings, male DNA was found on one of her vaginal swabs, and appellant could not be ruled out as the contributor.

In the wake of R.J.'s allegations, the police contacted appellant for questioning. Hoping to make appellant feel more at ease, they told him R.J. had reported it was her idea to have sex with him. They said if that was true, R.J. would need therapy, and therefore it was important for appellant to tell them if R.J. had ever tried to touch him inappropriately or if they had ever had sexual contact.

At first, appellant denied any misconduct. However, after the police told him they had DNA evidence supporting R.J.'s allegations, appellant admitted having sexual contact with her the time T.M. caught him with his pants down. Explaining that incident, appellant insisted R.J. was the one who initiated the contact. He said they were playing in the living room when all of a sudden R.J. gave him a hug and grabbed his penis. He told her that was wrong, but she took his penis and tried to put it in her vagina. According to appellant, his penis never actually went inside R.J., but it did briefly touch "the lips" of her vagina.

Despite appellant's attempt to mitigate his conduct, the police arrested him and took him into custody. The following day, appellant reiterated his claim R.J. initiated the encounter, and his penis only touched the lips of her vagina for a brief instant. He said that was the only time anything like that had ever happened.

Appellant was charged with two counts each of sexual intercourse and sodomy with a child and one count of sexual penetration of a child. (Pen. Code, § 288.7, subds. (a) & (b).)[1] By the time of trial, R.J. was 10 years old. With the assistance of a support person, she testified appellant put his penis in her vagina and butt on multiple occasions and he also put his fingers in her vagina one time.

---

[1] All further statutory references are to the Penal Code.

3

Testifying on his own behalf, appellant denied any wrongdoing. He said the only reason he admitted have sexual contact with R.J. is because he thought if he went along with the interrogating officer's "game," she would let him go. Asked why he repeated his admission the following day, appellant claimed a fellow jail inmate had informed him it would look bad if he changed his story.

The defense also called Bart Epley, the deputy sheriff who responded to R.J.'s house after her parents took her to the hospital. Epley testified T.M. never mentioned that appellant's pants were down when she saw him with R.J., and when he interviewed R.J., she seemed fine. Nevertheless, the jury convicted appellant as charged, and he was sentenced to 115 years to life in prison.

I

Appellant contends it was reversible error to allow R.J. to testify with the assistance of a support person. We disagree.

Pursuant to section 868.5, prosecuting witnesses in cases involving specified criminal offenses are entitled to have a support person with them while testifying. The prosecutor referred to section 868.5 in her trial brief, and in calling R.J. to the stand at trial she announced a "victim/witness advocate" would be sitting by R.J. At no point did defense counsel object to this procedure. However, appellant now contends it was error to allow R.J. to testify with a support person because 1) he was not charged with an offense specified in section 868.5, and 2) the trial court failed to follow the correct procedural guidelines for implementing that section. [2]

---

[2] Section 868.5, subdivision (a) provides in pertinent part, "Notwithstanding any other law, a prosecuting witness in a case involving a violation or attempted violation of Section 187, 203, 205, or 207, subdivision (b) of Section 209, Section 211, 215, 220, 236.1, 240, 242, 243.4, 245, 261, 262, 266, 266a [through] 266k, 267, 269, 273a, 273d, 273.5, 273.6, 278, 278.5, 285, 286, 288, 288a, 288.5, 288.7, 289, 311.1 [through] 311.6, 311.10, 311.11, 422, 646.9, or 647.6, former Section 277 or 647a, subdivision (1) of Section 314, or subdivision (b), (d), or (e) of Section 368 when the prosecuting witness is the elder or dependent adult, shall be entitled, for support, to the attendance of up to two persons of his or her own choosing, one of whom may be a witness, at the preliminary hearing and at the trial, or at a juvenile court proceeding, during the testimony of the prosecuting witness."

As to the applicability of section 868.5 in this case, appellant correctly notes the statute he was charged with violating (§ 288.7) is not included among the offenses listed in that section. However, the jury was instructed on the lesser included offense of simple battery under section 242, which *is* listed as a triggering offense under section 868.5. (See *ante*, pg. 4, fn. 2.) And although appellant complains the trial court failed to make an express finding that a support person was needed for R.J., it is doubtful such a finding was required because he was allowed to confront her face-to-face in the courtroom. (See *People v. Lord* (1994) 30 Cal.App.4th 1718, 1721-1722, distinguishing *Maryland v. Craig* (1990) 497 U.S. 836 and *Coy v. Iowa* (1988) 487 U.S. 1012, on that basis; accord, *People v. Johns* (1997) 56 Cal.App.4th 550, 553-556; but see *People v. Adams* (1993) 19 Cal.App.4th 412, which ruled the trial court must make an express finding of need whenever a witness support person is requested.)

In any event, because appellant did not object when the support person accompanied R.J. to the witness stand, he has forfeited his claim on appeal. (*People v. Myles* (2012) 53 Cal.4th 1181, 1214; *People v. Stevens* (2009) 47 Cal.4th 625, 641.) Anticipating this result, appellant argues his attorney was ineffective for not objecting. However, appellant has failed to show it is reasonably probable he would have obtained a more favorable result had his attorney done so, which is a necessary prerequisite to prevailing on an ineffective assistance of counsel claim. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

In attempting to establish prejudice, appellant argues that having R.J. testify with a support person may have subconsciously led the jurors to believe R.J. had been sexually traumatized and her testimony was credible. He also asserts that because the trial court did not admonish the support person to act impartially (see § 868.5, subd. (b)), she may have tainted the proceedings somehow. But that is pure speculation. There is nothing in the record to suggest the support person's presence actually had any effect on the trial.

As our Supreme Court has pointed out, "[N]o decision supports the proposition that [appellant] advances here, that the support person's mere presence infringes his due process and confrontation clause rights. '"The presence of a second person at the stand does not require the jury to infer that the support person believes and endorses the witness's testimony, so it does not *necessarily* bolster the witness's testimony." [Citation.]' [Citations.]" (*People v. Myles, supra,* 53 Cal.4th at p. 1214.)

Appellant also complains about the fact the prosecutor referred to the support person as a "victim/witness advocate" in front of the jury. He submits this "misdescription . . . could only have worked to compound sympathy for [R.J.] and to prejudice the jury against" him. However, the jury was instructed to base its decision solely on the evidence received at trial and not to be swayed by sympathy or prejudice. (CALCRIM No. 200.) And in cases where the support person has been referred to in similar terms, the California Supreme Court has been reluctant to infer prejudice in the absence of evidence that the support person actually influenced the proceedings. (*People v. Myles, supra,* 53 Cal.4th at p. 1214; *People v. Stevens, supra*, 47 Cal.4th at p. 641.) Because "the record does not disclose any circumstances indicating that [R.J.'s] support person improperly influenced the jury's assessment of her testimony" (*People v. Myles, supra,* 53 Cal.4th at p. 1214), we reject appellant's claim of prejudice. (*Ibid.*; accord, *People v. Spence* (2012) 212 Cal.App.4th 478, 517-518.) He has failed to prove he was harmed by, or his attorney was ineffective for failing to object to, the support person's presence at trial.

## II

Appellant also contends the trial court prejudicially erred in instructing the jury on the law respecting adoptive admissions. This claim also fails.

Per CALCRIM No. 357, the court instructed the jury, "If you conclude that someone made a statement outside of court that accused the defendant of the crime or tended to connect the defendant with the commission of the crime and the defendant did

not deny it, you must decide whether each of the following is true: [¶] 1. The statement was made to the defendant or made in his presence; [¶] 2. The defendant heard and understood the statement; [¶] 3. The defendant would, under all the circumstances, naturally have denied the statement if he thought it was not true; [and] [¶] 4. The defendant could have denied it but did not. [¶] If you decide that all of these requirements have been met, you may conclude that the defendant admitted the statement was true. [¶] If you decide that any of these requirements has not been met, . . . you must not consider either the statement or the defendant's response for any purpose."

Appellant argues this instruction was inapt because in questioning him, the police used a ruse in order to get him to confess, i.e., they told him R.J. was alleging that she was the one who initiated the sexual contact between her and appellant. Because this was not true, appellant argues his assent to the officer's allegations was not probative as an adoptive admission. The argument fails for several reasons.

First, appellant did not object to the subject instruction or the prosecutor's reliance on it in closing argument. Therefore, he has waived his right to challenge it on appeal. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1260.)

Second, it doesn't matter whether the details surrounding the accusation the police leveled against appellant were true or not. So long as appellant believed them to be true, his failure to deny them was clearly probative in terms of connecting him to the alleged offenses. In that regard, we must keep in mind that the primary purpose of the police questioning was to ascertain whether appellant had sexual contact with R.J., which he admitted. The question of who initiated the contact really had no bearing on that central question.

Third, the jury was instructed the statements were adoptive admissions *only* if the circumstances were such that appellant would have denied them if he thought they were untrue. So they were told precisely what appellant is now arguing for. The infirmity he is concerned about is addressed in the instruction.

Lastly, it is clear that although appellant was somewhat evasive and equivocal in answering some of the police officer's questions, he did eventually admit to having sexual contact with R.J.  In fact, he explained in detail how the contact occurred.  Because appellant expressly admitted the information covered by the adoptive admissions instructions, any error in giving the instruction was surely harmless.  (*People v. Watson* (1956) 46 Cal.2d 818, 857.)  Its inclusion in the trial court's charge to the jury is not cause for reversal.  (*Ibid*.)

## DISPOSITION

The judgment is affirmed.


BEDSWORTH, ACTING P. J.


WE CONCUR:


IKOLA, J.


THOMPSON, J.